The first case on the docket is 2-18-0529, people of the state of Illinois, Latiff-Affily v. Alejandro Hernandez-Cruz, defendant's account. Arguing on behalf of the defendant's account, Mr. Joseph W. Stahl. Arguing on behalf of Latiff-Affily. Camera, G. Patrick Wilson. Thank you. Mr. Substill? Yes. You may proceed. Thank you. Good morning, your honors. I'm Joseph Stahle. I appreciate you giving me the time this morning, and may it please the court. This is a case where the trial court's expression of self-doubt over the evidence, both at the end of the trial and in the hearing for a new trial, make the guilty verdict against the defendant so unreasonable, improbable, and unsatisfactory as to justify a reasonable doubt as the defendant's guilt, and it should allow for a new trial. How is his statement evidence of his uncertainty? I mean, as a trial judge, I don't know how many times I've said that to myself, the fact that I didn't say it out loud. I could be wrong. Yeah, everybody could be wrong. So how is that an issue of his uncertainty? Well, I think it's clear by the context of the entire transcripts from the January 31st date of ruling and then the hearing for a new trial. He didn't just say I could be wrong. He said I could very likely be wrong. And then he mentioned an appeal right. The bottom line is he expressed that after deciding pre-judging the hearing for a new trial and not even taking argument from the defendant or from the state. He also expressed doubt in the crucial events that occurred during the incident itself. Well, I mean, just preceding that particular statement, I could very likely be wrong. He says I'm sympathetic to you. Unfortunately, I don't believe your testimony. I understand. I understand that. But if we look at that's a statement and I think he set up even in the hearing for a new trial, he set up the argument by saying, you know, I understand you could you might not be able to sleep and I'd be upset as well. And all that, he set it up to basically decide against it. But then again, at the same time, it's almost I personally look at is almost a confessional statement. During the entire course of this, the ruling on January 31st, he every time he said, I'm confident of the consistency of the testimony of the witness. And she's more believable. He then turns around and says, well, yeah, but I don't believe I don't know who threw the lamp. How can you not know who threw the lamp? You're saying our guy was the defendant was more believable in the bedroom that you're sympathetic to the fact that he was that you'd be upset if you were awake and awake and asleep as well. And then at the same time, then right after you say, but I don't know who threw the lamp. Well, the lamp is the inciting event. If he threw the lamp, then then then what the judge might believe is that he then threw the lamp. He put his hand on her mouth and they walked up to the kitchen as she testified to. If, on the other hand, the judge believed him, which he said on such a time, I found it very believable in the bedroom. Then he basically he was trying to get some sleep. He ignored her. She got frustrated with his repeated attempts with his indifference towards her pleas or attempts to wake him up. And then she threw the lamp, stopped out in the kitchen. She awakened the kids. And then he went out to find what the commotion was going on. So they're two very, very opposite stories or versions. And they set up the kitchen differently. What happened in the kitchen? Really, what convicted your client? It's it sounds that way, but it very much sounds that way. But here's the thing. We all know. Well, I won't say what we all know, because I won't suppose what you know. My suggestion is that these events happen in a continuum. OK. The evidence is that the evidence was that he came home. He was tired. He wasn't upset. He was smiling. All this stuff. She had this supposition that he was maybe secretly upset, although he didn't yell at her, didn't yell at the kids, didn't argue, didn't do anything that was aggressive in any way or suggest he was upset. So she was setting that up, that, you know, I knew he was upset. The judge, I think, even one time, we objected to the judge saying, well, the judge, we objected. And the judge said, well, I understood what she meant. She's upset because they've known each other for so long. And the truth of the matter is the judge never even mentioned or analyzed the their nature and extend the relationship with the time together. This is a couple that had been together, that made each other five months before this occurred, five to six months. They had lived together for three to four months. I think was a testimony. And they don't only know each other for two months. He had, he had, so they didn't know each other for a total of five to six months. And yet suddenly the judge is understanding that, that the complaining witness knows what, what, what the defendant is thinking when he comes home without stating anything. It's kind of improbable. And I get the suggestion that it was, I just don't think that was believable. I don't think it was consistent. I don't think it was a believable testimony by, by the complaining witness into the bedroom. So then she, the judge then analyzes the bedroom. Well, he admits that in the bedroom that she instigated the event. She came in, she pestered him, she woke him up four and a half hours into his sleep. And then, and when he, so that's when the stories diverge really, at least most significantly. He says, I ignored her because I was tired and I wanted to get some sleep. I had to wake up at one o'clock in the morning to be at work at two to three. She says, well, I, I, I kept turning on the lights. They both agree on that. Then he says, I ignored her. She says he flew into a rage and threw the lamp. Well, that's just that right there. So to me, that's the crux of what everything is going. Because either he flew into a rage, threw the lamp, and would have then, you can see, he would have grabbed her by the neck. Okay. He said, look, I didn't throw the lamp. I just wanted to go to bed. I turned off the lights. She got frustrated with my lack of attention or my indifference towards her attempts to get me to do something. And she threw the lamp and she went out in the kitchen. Now. Hey, so a lamp got broken. I don't really care at this point who broke the lamp. Why does he follow her to the kitchen? Or why do they both go to the kitchen? And what happens in the kitchen? He follows her to the kitchen because he, because, because he hears her making a motion. The kids are crying. He wants to know what's going on. In the kitchen. See, here's the thing is, the judge seems to cherry pick, which he says, I don't believe you. I don't find you credible. At the same time, he believes certain things of what he says. I find you believable in the bedroom. In the kitchen, I don't find you believable. If you believe him in the bedroom, that he went out there and said, look, we can, we can break up. You want it? You want it to end the relationship? That's fine with me. And he said. The record says. At seven and eight, I could very likely be wrong. There's an appeal process for you. But in my mind, I'm not wrong. Obviously, I wasn't there. But I thought her testimony was very consistent. I thought her demeanor on the stand was very believable. And I just didn't buy into the way you said things happened, either in the bedroom or certainly in the kitchen. Now, I could very likely be wrong. And there's an appeal process for you in this instance either. But in my mind, if I said I was firm in my belief that this judge did not say anything that is equivocal or indicative of his belief that he was committing any reversible error, would you claim on appeal with a PLA that what I've just said is something upon which you could base a PLA and claim that I am saying to you now that I think I could be wrong? And therefore, you could file a PLA based upon the fact that I may or may not sign off on an affirmance? Well, based on what we've argued, it depends on the context. And I would say, no, I couldn't because, quite frankly, your interaction with me right here was all of a couple minutes and a couple sentences. So there wouldn't be much there. What we're saying is the arguments from January 31st and from the hearing on a retrial for a new trial, he contradicts. How can the judge say, this lady went in and was in the bedroom. Let's assume that she was right. No, I won't assume anything. She says he walked into the kitchen. I was afraid. I just wanted to get out of there with my kids. Okay? So then it stops. She wasn't afraid he was going to hit her because there was no testimony to that. She was afraid of his strong personality, which is, I'm not really sure what that means. But that's, it is what she testified to. Was your client found guilty of criminal damage to property? No. Whose lamp was it? There was no testimony to whose lamp it was. There were two counts. One was, they're both under the statute. They're both for domestic battery, are they not? Yes, but. So then why is who broke the lamp germane to anything, especially if there's no evidence as to who owned the lamp? Well, again, to put the pieces of the puzzle together, you have to answer certain things. And the who broke the lamp is the predicate in inciting events to what happened in the kitchen. You can't believe one, partially, you have to believe one or both. Either he walked her out there to the kitchen and then she was afraid for her life and wanted to get out there. Now, the judge suggested, well, maybe you should have just gone for a walk or left the apartment instead of sleeping. But the truth is there was no cooling off period needed because after the kitchen, he went back to bed. She went back to the bedroom and started rummaging around, throwing things, trying to keep him up. He didn't do anything else. She testified that she wasn't in any fear from him in the bedroom for the next two hours. He didn't take her cell phone. He didn't detain her. He didn't do anything, which you would normally think that someone who is out of control or doing what she's claiming he did would do. It could also be evidence. I mean, if we're talking about reasonable inferences, it could be evidence of his saying, oh, my God, I can't believe I just did that. I'm contrite. I'm just going to stay in bed and not say anything. Okay, well, usually somebody like that. Just as reasonable as what you're saying. Well, theoretically, but you also expect somebody to do that, to say, I'm sorry, I apologize so much. I can't believe I did that. You know, please forgive me, something like that. He said, if you want to end the relationship, you can go. He walked back into the bedroom and went to sleep. She didn't fear him. She stayed there for two hours. She didn't make any calls. She only packed her bags. His testimony was that she said, you're going to be sorry for doing this, for kicking me out, essentially, because. So you're going to be sorry for doing this. And then after she packed her bag, then she called her police friend. It's a false complaint because of revenge? Is that a false complaint that went to trial? Is that what you're saying? I don't have. There was no evidence presented that there was a false complaint. There was just a testimony of him that she said that he was going to do, that he was, she was going to seek revenge on him. The state didn't cross-examine him on that. They didn't, they didn't attempt to rebut it in any fashion. So his testimony is out there. She, she, she said, she said what she said. He reported it. She didn't deny it. She didn't say, that's not true. I never said that. So we have to take unrebutted evidence as, as, as what it is. It's for its face value. The bottom line is, the kitchen supposedly happened. His testimony about the kitchen was he went out there and she was still upset with him. She saw him and she was so frustrated. She started doing this and he grabbed her arms and said, calm down. If you want to, if you want to leave the relationship, I'm happy to let you do that. Now this is a guy that took in, after a short period of time, took in this woman and her, and her children. And he's housing them. He's paying for them. He's their sole support. He works six days a week. He doesn't seem to be, there's no testimony he was drinking, no testimony he was, he was an unreliable man in any way. In fact, the judge on multiple occasions said, well, I, I commend how hardworking of a man you are. So I think the consistency is that he was completely consistent in his testimony in that he was tired. He came home. He went to bed. She woke him up. She, she woke him up. She was frustrated with what he was doing. He threw the lamp. He went and said, all right, you want me to leave? That's fine. I'm going back to bed. She claims he was nice when he came home, but he was angry without any evidence of that. Then she started something. The judge even said, well, she may have committed domestic violence herself. Okay. Well, how's he, how did he, how do you get from him laying in bed? Is it more believable that he laid in bed and just was like, all right, I'm going to let you go? Or is it more likely that, that, that someone threw the lamp and he was the one who was an aggressor out in the kitchen? Because there's no, if you're looking at it from a continuum and a complete context, there's no, there's no link between her testimony. She says, you know, I came in and at one point she admitted hitting him and then she tried to minimize it and said, well, I didn't really hit him. Counsel, you said that she claimed that she was going to get revenge. Is that correct? At least that's what he testified to. Okay. And that's supposed to impeach her testimony or what exactly is it supposed to do? No, it's just another piece of evidence as to the, as to the whole, as to the whole event. Wouldn't it tend to corroborate her belief that she was entitled to seek revenge? And therefore, if she was entitled to seek revenge, that she believes that she was actually wronged in some way, shape or form. And therefore, it is essentially a prior consistent statement in the sense that it is consistent with what she was alleging took place in the past. I don't know. Well, my point is, is why are you arguing a point if supposedly a person who's seeking revenge is normally seeking revenge because they've been wronged, as opposed for seeking revenge for some sort of ulterior reason such as vindictiveness or just evil? So unless there's evidence of evil or vindictiveness, your argument basically is corroborating the fact that she is saying something that's consistent with what a person who's been battered would want, which is, isn't it the public policy of the state to punish domestic batteries? And therefore, it really isn't revenge, but it is reporting? I wouldn't go that far, no. No, I wouldn't. I mean, that's, that's a stretch in a completely opposite, different way. There's no evidence to suggest that. It's a small stretch. I'll give you that. But, I mean, again, our argument has always been that his testimony has been, is more consistent. Her testimony is inconsistent. And the judge essentially neglected the before and the after to come to their, to come to this conclusion. Okay, your time is up. You'll have an opportunity to make rebuttal, sir. Thanks, Judge. Thank you. Mr. Barrett, you may proceed. Good morning, Your Honor. Good morning. May it please the Court. Counsel. I'd like to just start by pointing out. The defendant makes the point that there's nothing corroborating the victim's testimony. And yet, if you examine the charging documents, there's bruising on her arms. There is evidence of physical violence and battering. So, to say that her testimony is somehow not corroborated independently in any way, and this is a coin toss between the defendant's testimony and hers, is just simply, it just stretches too far. She's angry. I think you'd have to admit that. Or she's unhappy about something, and she's trying to express it. And so they're in the kitchen, and she does, you know, reach out and maybe hit him. Doesn't he have the right to grab her to stop the hitting? Based on her testimony, she said that she never struck him and never hit him. Now, the trial court believed her testimony repeatedly described the defendant's testimony as not likable. So, based on her feeling threatened, his stature versus hers, his aggression toward her, I think it was more than reasonable for the trial court to believe that she never laid a hand on him, that he came at her aggressively, that he grabbed her arms, in fact caused bruising, which is reflected in his charges. And this physical trauma that was caused to her was not warranted by whatever couple squabbled. And who was responsible earlier for inciting this squabble in the bedroom? How many couples have argued? We all have. But to somehow equate a squabble with, now I'm laying my hands on you, and you're somehow responsible for this physical act of aggression because we were having an argument, that, just as McLaren happily pointed out, we protect victims from defendants who will take advantage of arguments like that. Who say, you know what, you argue with me, so I get to command you physically. That is not okay. So, that is a good reason to uphold this judgment in addition to, you know, the wealth of evidence and the trial court's discretion in finding the victim's testimony credible. I think it's also pretty clear that he's not afraid to, he believes her, but doesn't he say something like, you know, I'm sorry about this relationship, he gives a little kind of advice to the love lord almost. Does it look like she's the right girl for you? Does that show any favoritism toward her testimony or does it look like he's just trying to get the facts straight, weigh the facts? I don't think that comment had any bearing on the charges against the defendant or the ultimate outcome of the case. I think the nature of the relationship was clearly there were issues here, there's communication issues. The fact that a couple has communication issues is separate and independent from someone who's perpetrating aggression and violence toward another person. The fact that she may not have, you know, or mesh with his personality isn't somehow intertwined with, you know, her responsibility for being attacked. You know, that, you can't put those two in any way. Now, that isolated statement, you know, that's kind of why we're here today, he said, and this was not a statement that was made at the close of the bench trial. This is not a statement that was made in rendering a judgment. This is a statement that was made in denying a motion for a new trial. I could very likely be wrong. Hey, I'm human. I'm human, I'm wrong sometimes. You know, there's an appeal process, but I don't think I'm wrong. You know, the most reasonable reading of that statement is that this is just a general comment about, hey, I'm factual, I'm human, I could be wrong. There's an appeal process, but I don't think I'm wrong. Well, if he was wrong, and he thought he was wrong, wouldn't it logically follow, assuming that he's a logical human being, that he would have granted the motion? In its context here, it was an inartful expression. You know, it's not probably the choice of words that a judge would want to make in a proceeding, but unfortunately, that was a choice of words. Hey, he's human. He's admitting he's human here, and we're here today because he is. Well, usually we see the statement, the appellate court's not going to get me on this one. That's what we usually see, not this. So it was an unfortunate choice of words, but I think framed in context with all the other comments the trial court made, and especially the unequivocal statements during the judgment at the close of the bench trial. We know, you know, he had no wavering in his decision. The defendant was guilty in this case. Unless there are any further questions, I would ask this court, humbly request this court to hold a judgment trial court in this case. Thank you. Mr. Substale, you may proceed. Thank you. Very briefly, Your Honor. The question about the bruising on the arms is interesting because that would support the testimony of the defendant that he was trying to stop her from hitting him. Her testimony and the judge's inability to determine what actually happened and where it happened in the kitchen were part of what we cited in our briefs. The judge thought that she said it could have been her face, it could have been her neck, it could have been her chest. That's physically impossible at one time. He didn't know. It was not clear to him where this alleged battery occurred. Second of all, he said, even in the rear hearing, I think it was, that he couldn't determine it. At one point he said it was in front of the refrigerator. Then he said, well, it may have been against the wall. We don't know. The charging document talks about bruising on the arms and wrists, which clearly only supports the testimony of the defendant and not the testimony of the complaining witness. As the counsel said, there's no mention of stature. It could have been stature or it could have been aggression. She said strong personality. That's the only thing she mentioned for any basis of fear. That was only in the kitchen. There was nothing in the bedroom that she feared at all about him as he was trying to get some final sleep before having to get up to go to work. As far as the justice's question about favoritism, I don't know. Look, when he says he started off, the first statement of his ruling in the trial court was, I have a moral certainty about this. Now, I've never heard that stated in that way, and I don't know if that expresses some overlying predisposition to find for her as opposed to him. He later stated in the trial court that, you know, you just can't do things like this. There's no legal basis for doing things like this. Almost as if he was saying, you know, doesn't matter what she's saying, you can't do this. As far as the rehearing goes, you know, there's a question. If the judge thought that he did have some doubt about reasonable, he questioned reasonable doubt, wouldn't he have then granted the motion? Well, the truth of the matter is he states right in the rehearing transcript first thing off. He hears defendant's counsel, and then he stops the state before they even start and says, hey, do you mind if I decide this case without even hearing any argument from you? So at that point in time, he's already made up his mind. He says, I remember the case. Then he goes into it. Then he expresses doubt. Then he tries to buttress what he previously said. He's back and forth, and as we stated in our brief, that's just his final expression of doubt. The fact that he doesn't know what happened in the inciting event that would have led to the thing in the kitchen, which is apparently what he believes, where my client was found guilty, without even considering the subsequent events in the bedroom, which there was no fear. She stayed there for two hours. She had a cell phone. She couldn't have called anybody. She couldn't have taken the kids. She couldn't have done anything. She could have fled if she was truly scared, but she didn't. Would it be safe to say that the judge made findings of credibility? Well, it would be safe to say the judge made findings of credibility, but it would also be safe to say that he didn't back those up by saying why she was more credible. There was numerous instances of why is she more credible? What made her so much more credible? He said she lied to her demeanor. He said he found her testimony consistent. She found her credible, but he didn't say why. He didn't say this is how I see the picture. This is how I see it going. Here's what happened in the beginning, before, during, and after. Here's why she's more credible. Here's why she's credible. Here's why the defendant is not credible. Here's why I believe her. Here's why I don't believe him. So you can say somebody is more credible and consistent, and he's the trial judge and the fact finder at the same time, so he's given definition. There's no case law or authority that says that the judge has to do that because it's my understanding, based upon my experience with a particular judge who will remain unnamed, he never made a finding of fact or he only made conclusions of law. And when requested, he refused to make findings of fact, which then, on appeal, put the appellate court in a position of presuming that all the contested or controverted facts that were raised during the trial were found in favor of the winner, and therefore we were supposed to then determine whether or not those findings were against the manifest weight. So if the judge doesn't have to make findings and we're supposed to make presumptions based upon those lack of findings, why would it be any different in this situation? There is no direction or no statute that I know of that requires they do that, and I've been in front of trial courts that make findings, and I find that very helpful, and I've been in front of trial courts that do not. And I get frustrated as well with trial court judges who do not try to protect themselves from being overturned. The reason why you would do it here is because, as I said at the outset, his reasoning is a decision without any findings of fact and explanation of his inferences makes the decision so unreasonable and probable and unsatisfactory as to justify a reasonable doubt as the defendant's guilt. So that is – that sort of sums it up. It's a tough decision. It's – I understand what I'm asking, but at the same time, I think the evidence justifies that. Ultimately, you're asking us to overturn this on sufficiency of the evidence, and sort of the coup de grace is – and the trial court wasn't sure about the sufficiency of the evidence either. Isn't that basically what your argument boils down to? No, I believe there's sufficient evidence to find the defendant not guilty. I believe there was evidence to make a decision one way or the other. The fact that he didn't do it just means he didn't do it, but that doesn't mean it was incapable of being done. As stated by the Supreme Court in People v. Gray, although a fact finder's determination of witness credibility is entitled to great deference, it is not conclusive and does not bind the reviewing court. So in my opinion, you're not bound and you're entitled to reverse the decision or to order a new trial based on the trial court's decision as the evidence warrants, and that's exactly what I'm requesting you to do. That's all I have. Thank you. Thank you. We have other cases on the court call. There will be a short recess.